IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT MARTINSBURG

**GEORGE RAMONAS,**

**Plaintiff,**

v.

Civil Action No.: 3:08-CV-136
Judge John P. Bailey

**WEST VIRGINIA UNIVERSITY
HOSPITALS-EAST, et al**

**Defendants.**

## JOINT SUBMISSION OF MOTIONS IN LIMINE DEFENDANTS JEFFREY TRENT COOK, M.D., WEST VIRGINIA UNIVERSITY HOSPITALS-EAST, INC. and JEFFERSON MEMORIAL HOSPITAL

Come now Defendant Jeffery Trent Cook, M.D., by counsel, Tracey B. Eberling and Steptoe and Johnson PLLC, and Defendants West Virginia University Hospitals-East, Inc. and Jefferson Memorial Hospital, by counsel, Christine S. Vaglienti, and respectfully submit the following motions in limine and the Memorandum in Support, to exclude or limit the testimony or other evidence, as follows:

1.      Any testimony, argument, or opinion by Plaintiff that would fix or suggest a formula or fixed-time basis for establishing a monetary loss for general damages, including damages for pain and suffering, mental anguish, annoyance and inconvenience, and loss of enjoyment of life.

2.      Any mention or argument by the Plaintiff which would place a specific monetary value on the Plaintiff's damages or any mention of the *ad damnum* clause as a basis for Plaintiff's damages.

3.     Any evidence or testimony that the Defendants had liability insurance at the time of the accident.

4.     That a verdict returned against Defendants will "send a message to the medical community," "improve the quality of healthcare," or "guarantee the protection of others."

5.     That Defendants would not be adversely affected by the rendering of a verdict against them.

6.     Any testimony from undisclosed witnesses.

7.     Any "golden rule" argument that would ask the jury to place themselves in the shoes of Plaintiff.

8.     Any lay or expert evidence or testimony, or argument pertaining to Plaintiff's claims for lost wages or loss of earning capacity, economic loss.

9.     Any argument which does not comport with a "fair opening" and a "fair closing."

10.    Any evidence or testimony pertaining to settlement discussions or the parties' attempts to resolve this dispute prior to trial.

11.    Any testimony from any expert witnesses for whom a full and complete disclosure of opinion has not been rendered on a timely basis.

12.    Any opinions regarding the medical standard of care applicable in this instance or any opinions regarding the cause of Plaintiff's injuries offered by any witness who is not qualified to do so pursuant to W. Va. Code § 55-7B-7 or for whom Plaintiffs have not provided information regarding that individual's qualifications and expected testimony pursuant to W. Va. R. Civ. P. 26(b)(4) and as ordered by this Court.

13.    No cumulative expert testimony.

14.    Causation testimony by Dr. Milzman for which no proper basis exists.

15.     Any evidence of permanent injury.

16.     Any evidence or argument that the Plaintiff sustained injury or damage to his kidney(s), bowel and/or bladder or that he suffers from sexual dysfunction as a result of the alleged medical negligence of the Defendants.

17.     Any claimed future medical expenses being claimed in this action which have not been identified in discovery, as requested, and which are not supported by a foundation of qualified expert testimony that they are "reasonably certain."

18.     Any evidence of future pain and suffering, future mental anguish and emotional distress, or impairment of capacity to enjoy life.

19.     Any evidence of other civil actions against any of the Defendants.

20.     Any medical bills that either Plaintiff or his collateral source were not truly obligated to pay.

21.     Any improper lay opinions regarding the medical standard of care applicable in this instance or any opinions regarding the cause of Plaintiff's injuries offered by any witness who is not qualified to do so pursuant to W. Va. Code § 55-7B-7 or for whom Plaintiff has not provided information regarding that individual's qualifications and expected testimony pursuant to W. Va. R. Civ. P. 26(b)(4) and as ordered by this Court.

22.     Hearsay testimony by Redding Finney

23.     Hearsay testimony by Denise Ramonas

24.     Testimony by any witness regarding Plaintiff's sacral fractures.

25.     Any expert testimony that the Defendants' alleged failure to follow the accepted standard of care deprived George Ramonas of a chance of recovery or increased the risk of harm to George Ramonas.

26.     Any evidence or argument or suggestion that facts adopted by the Court in ruling upon JMH's Motion for Summary Judgment (Doc. 114) are "undisputed" or "established by the Court."

## MEMORANDUM OF LAW IN SUPPORT OF MOTIONS IN LIMINE

1.     Any testimony, argument, or opinion by Plaintiff and his counsel that would fix or suggest a formula or fixed-time basis for establishing a monetary loss for general damages, including damages for pain and suffering, mental anguish, annoyance and inconvenience, and loss of enjoyment of life.  The Supreme Court of Appeals of West Virginia has held that "in an action to recover for personal injuries, [where] the damages are unliquidated and indeterminate in character, the assessment of the amount is generally for the jury." *Yuncke v. Welker*, 128 W. Va. 299, 36 S.E.2d 410 (1945).  *See also Hunt v. DiBacco*, 69 W. Va. 449, 71 S.E. 584 (1911)(holding that "where damages do not admit definite estimate and there is no legal measure, the law leaves the measure to the sound discretion of the jury.").  The rational for this rule is sound and directly applicable in the case at bar.  Such arguments are not based upon any facts in evidence or are solely based upon inadmissible facts.  Such arguments also play to feelings sympathy or passion within the jury.  Therefore, *per diem* or mathematical formula arguments should be strictly prohibited as the Plaintiff attempts to recover general amounts of damages.  The jury is the only proper group to place a value on such damages.

The Plaintiff should not be permitted to influence the jury by arguing that damages should be calculated using a mathematical or "per-diem" formula.  In *Ilosky v. Michelin Tire Corp.*, 307 S.E.2d 603 (W. Va. 1983), the Supreme Court of Appeals of West Virginia held that suggestions of a "per diem" formula during remarks to the jury is not permitted in West Virginia.

It further held that the use of any formula for calculating damages regarding Plaintiff's pain and suffering is not allowed.

Similarly, in *Crum v. Ward*, 146 W. Va. 421, 122 S.E.2d 18 (1961), the Supreme Court of Appeals of West Virginia held that "in an action for damages for personal injuries, an argument of counsel to the jury based on a mathematical formula, or fixed-time basis, suggesting a money value for pain and suffering is not based on facts, or reasonable inferences arising from facts before the jury, and constitutes reversible error." *See also Armstead v. Hobart*, 122 S.E.2d 43 (W. Va. 1961). Thus, "counsel, in arguments to the jury, may not argue based on facts that are not in the record or facts that are not even admissible." *Abdulla v. Pittsburgh & Weirton Bus Co.*, 158 W. Va. 592, 213 S.E.2d 810 (1975)(citing *Crum*, 146 W. Va. 421 at 434). Therefore, Plaintiff and his counsel should be restrained from introducing testimony, argument, or opinion relating to the amount of damages that is not supported by the evidence in the record and ought not to be permitted to place a monetary value on the non-pecuniary damages claimed.

2.     Any mention or argument by the Plaintiff which would place a specific monetary value on the Plaintiff's damages or any mention of the *ad damnum* clause as a basis for Plaintiff's damages. Informing the jury of the amount sued upon in the ad damnum clause of the Amended Complaint is *per se* improper, and those cases that have addressed the question have held that such a practice is disfavored and discouraged. "Certainly, the better practice would be to withhold any monetary figure from the jury's consideration which might be suggestive of amounts of damage not proven in evidence." *Jordan v. Bero*, 158 W. Va. 28, 210 S.E.2d 618, 629 (1974). "While the impropriety of such argument is not prejudicial *per se*, it cannot be disregarded in considering the broader question of whether the verdict was excessive when compared with competent proof of damages." *Abdulla*, 213 S.E.2d at 823 (1975)(emphasis

added).  *See also Bennett v. 3 C Coal Co.*, 180 W. Va. 665, 379 S.E.2d 388 (1989); *Gault v. Monongahela Power Co.*, 159 W. Va. 318, 223 S.E.2d 621 (1976).

While reference to such a speculative amount of damages does not, in itself, constitute reversible error in all instances, reversible error may occur where the verdict indicates that the jury is influenced by such statements. *Bennett*, 379 S.E.2d at 397.  *See also Jordan*, 210 S.E.2d 618; *Gault*, 223 S.E.2d 621; *Abdulla*, 213 S.E.2d 810.  It follows that the more numerous or elaborate the references to the ad damnum amount, the greater the danger that the jury will ascribe significance to it, thereby magnifying the risk of prejudice and lead to mistrial or reversal on appeal.  Likewise, reading the ad damnum to the jury, members of which might perceive it to derive from a legal and thus authoritative document, compounds the likelihood of such an untoward result.  The courts that have considered the question of whether curative instructions to the jury are sufficient to negate improper references to the ad damnum–a question which is unresolved in West Virginia--are divided.  *See* L. GROFF, Anno., *Propriety and Prejudicial Effect of Reference by Plaintiff's Counsel, in Trial of Personal Injuries or Death Action, to Amount of Damages Claimed or Expected by His Client*, 14 A.L.R.3d 541.

Thus, West Virginia law clearly establishes the impropriety of referring to the ad damnum clause of Plaintiff's Complaint, and any such reference should be excluded.  Such references merely invite a jury to improperly base a damage award on matters which are not in evidence or which are inadmissible in evidence.  Insofar as a plaintiff has no right to an award of damages based on anything other than the evidence presented, such references cannot advance or preserve any right of a plaintiff.  Absent any legitimate countervailing consideration, their net effect can only be to risk substantial prejudice to the defendant.  In particular, when such argument or opinion is offered for the first time in the rebuttal portion of closing argument,

where opposing counsel has no opportunity for rebuttal, the danger of prejudice to Defendants is elevated, and the practice is particularly to be condemned. *See Shaw v. Terminal R. Ass'n*, 344 S.W.2d 32 (Mo. 1961); *Shapiro v. Kravitz*, 754 S.W.2d 44 (Mo. App. 1988).

      3.      Any evidence or testimony concerning whether any of the Defendants had liability insurance at the time of the accident. Pursuant to Rule 411 of the Federal Rules of Evidence, Defendants' status as insured or any mention of Defendants' insurance company should be excluded, and Plaintiff and other witnesses called on his behalf should be specifically instructed not to interject those matters into their testimony. This prohibition is "based on the assumption that jurors who are informed about the insurance status of a party may find that party liable only because the liability will be cost-free to the party, or that jurors will increase the amount of damages because only an insurance company will be affected adversely." *Reed v. Wimmer*, 195 W. Va. 199, 465 S.E.2d 199, 205 (1995). Thus, the West Virginia Supreme Court of Appeals concluded that "under the West Virginia Rules of Evidence, the doctrine is clear, and compliance with Rule 11 and the other rules discussed in this opinion is not a matter of judicial discretion." *Reed*, 465 S.E.2d at 205." The existence of insurance is also irrelevant to the amount of the Plaintiff's damages. Therefore, Rule 411 must be strictly observed to avoid any reference to insurance which might unfairly prejudice the Defendants. All witnesses should be advised of Rule 411 prior to their testimony.

      4.      That a verdict returned against Defendants will "send a message to the medical community," "improve the quality of healthcare," or "guarantee the protection of others." Such an argument or assertion would be proposed solely in an attempt to persuade the jury to render a verdict based not upon the evidence, but upon some other supposed or benevolent objective, or even out of concern for the future well being of their own persons or families. As such, it is

prohibited by Rules 402 and 403 of the Federal Rules of Evidence.

5.      That Defendants would not be adversely affected by the rendering of a verdict against them.  This suggestion is simply untrue.  Depending upon how it is stated or argued, the point could be taken as an implication that there is "insurance money" or some other fund available to pay any verdict rendered.  This implication is prohibited by Rule 411 of the Federal Rules of Evidence, and discussed more fully in motion in limine number three.

6.      Any testimony from undisclosed witnesses.  The Plaintiff should not be permitted to call any witnesses at trial that he did not identify in discovery as such would deprive the Defendants of the opportunity to interview or depose witnesses before trial.

7.      Any "golden rule" argument that would ask the jury to place themselves in the shoes of Plaintiff.  Courts that have considered the question of "golden rule arguments" are virtually unanimous in their condemnation of argument that urges jurors to place themselves in a plaintiff's position for purposes of calculating damages and to treat the plaintiff as they would wish to be treated.  *See generally* Anno. *Prejudicial Effect of Counsel's Argument, In a civil Case, Urging Jurors to Place Themselves in the Position of Litigant or to Allow Such Recovery as They Would Wish if in the Same Position*, 70 A.L.R.2d 935 §3(a).  The authorities are in agreement that such argument, based on the biblical "golden rule," improperly seeks to appeal to the sympathy of the jury and is thereby improper.

In West Virginia, this issue was first addressed in *Keathley v. Chesapeake & Ohio Ry. Co.*, 85 W. Va. 73, 102 S.E. 244 (1919), where the Court held that an admonition to the jury to place itself in the position of the plaintiff, while improper, did not warrant reversal where it was not objected to by the defense.  The issue was revisited in *Ellison v. Wood & Bush Co.*, 153 W. Va. 505, 170 S.E.2d 321 (1969), which, while reiterating that such "golden rule" argument is

improper, found that the argument presented did not fall within the stricture relating to such argument. In so holding, the Court cited with approval the *Keathley* case and several Virginia cases as characterizing the rule by which it viewed the propriety of such argument.

In *Seymour v. Richardson*, 194 Va. 709, 75 S.E.2d 77 (1953), the Court found it unnecessary to reach the question of whether the improper inclusion of such argument warranted reversal insofar as other grounds for reversal had been established, but did find

> that part of the closing argument of the plaintiff's counsel . . . was improper and should not be repeated. . . . The important ["golden"] rule so attempted to be invoked was designed to regulate the conduct of men among themselves before they bring their controversy to a jury. The function of the jury is to decide according to the evidence, not according to how its members might wish to be treated. *Id.*, 75 S.E.2d at 81.

Thus, it is clear that in West Virginia, a long line of authority has held "Golden Rule" arguments or similar arguments to be improper. Such admonitions asking the jury to place themselves in the Plaintiff's position seek only to invoke feelings of sympathy or passion. They are not based upon any admissible evidence. Thus, they are impermissible and should be prohibited from the trial of this matter to avoid the risk of the jury being swayed and Defendant prejudiced, thereby resulting in reversible error.

8.      Any lay or expert evidence or testimony, or argument pertaining to Plaintiff's claims for lost wages or loss of earning capacity, economic loss. While it does not appear the Plaintiff will be making any such claim, this Motion is filed out of an abundance of caution. No information has been provided with respect to this aspect of the Plaintiff's damage claim and no expert has been identified to testify on this issue. Based on the foregoing, the Defendants move this Court for an order in limine to prohibit the Plaintiff from making any argument or presenting evidence at the trial of this matter concerning past and/or future lost wages, in light of the fact

that he has not properly disclosed the information requested in discovery, or the necessary expert witnesses to prove such allegations and thus should be barred from any attempt to introduce evidence thereof.

Plaintiff has not established a claim for lost income or loss of earning capacity through expert vocational and economic testimony _timely disclosed_. If a party seeks to _quantify_ his or his loss of earning capacity by placing a specific monetary value on it, such claim must be established through _expert testimony_ establishing the existence of a permanent injury, its vocational effect on the plaintiff's work capacity, and an economic calculation of its monetary loss over the party's work-life expectancy, reduced to a _present day value_. _See Liston v. W. Va. Bd. of Trustees_, 438 S.E.2d 590 (W. Va. 1993)(emphasis added).  No witness, however, has been identified to properly testify on this subject.  Additionally, since Plaintiff was required to identify his experts in accordance with the Court's Scheduling Order and to fully respond to the respective Defendants' discovery requests which sought expert information, and because Plaintiff failed to disclose any such information to the Defendants, any such testimony should be excluded.  Therefore, Plaintiff should not be permitted to introduce any testimony or other evidence to the jury which would pertain to any claims for lost wages or loss of earning capacity.

9.    Any argument which does not comport with a "fair opening" and a "fair closing." While a plaintiff in a civil case has a right to make an opening and closing argument at the conclusion of all the evidence, he or she is further required to make a _fair_ opening argument with regard to the evidence and points relied on in order to allow the attorney representing the defendant to answer such matter after the opening argument because he cannot reply to the closing argument of the plaintiff. _See State v. Hamric_, 151 W. Va. 1, 151 S.E.2d 252 (1966).  A full opening argument should always be made "in order not to mislead or withhold any material

points supported by the evidence and relied on to support the state's or plaintiff's position." *Id.* at 267.

10.     Any evidence or testimony pertaining to settlement discussions or the parties' attempts to resolve this dispute prior to trial.   Rule 408 of the Federal Rules of Evidence bars any reference to settlement negotiations and thus the court should prohibit any testimony or argument concerning the same.

11.     Plaintiff should not be permitted to offer expert opinion testimony from any witness from whom a full and complete disclosure has not been made on a timely basis.  Plaintiff disclosed as experts Drs. Milzman, Sandhu, and Siegel and provided the information for these witnesses required under Rule 26.   Plaintiff also listed by name only ten of the Plaintiff's treating physicians from George Washington University Hospital.  Plaintiff should not be permitted to offer opinion testimony, either to the standard of care or medical causation from any of the Plaintiff's treating physicians from whom Plaintiff has not provided information regarding that individual's qualifications and expected testimony pursuant to W. Va. R. Civ. P. 26(b)(4) and as ordered by this Court.

12.     Any opinions regarding the medical standard of care applicable in this instance or any opinions regarding the cause of Plaintiff's injuries offered by any witness who is not qualified to do so pursuant to W. Va. Code § 55-7B-7.

a.     Plaintiff should be barred from offering standard of care testimony in this matter by Dr. Sandhu as to Dr. Cook because Dr. Sandhu is not qualified to render such expert testimony according to the West Virginia Medical Professional Liability Act, and his testimony would cumulative of the testimony of another of the Plaintiff's experts, David Milzman, M.D.. Plaintiff disclosed Faheem Sandhu, M.D., a neurosurgeon, as an expert witness in this case.

Plaintiff seeks to have Dr. Sandhu testify regarding both medical causation and the standard of care for Dr. Cook and the staff at Jefferson Memorial Hosptial.

Dr. Sandhu's deposition was taken April 28, 2009 and Defendants now move to exclude him as an expert witness as to the standard of care because he is not qualified to render expert testimony according to the West Virginia Medical Professional Liability Act. Dr. Sandhu does not qualify as an expert under the West Virginia Medical Professional Liability Act ("MPLA"). The MPLA requires that an expert meet the following qualifications before being rendering expert testimony in an action covered by the MPLA.  Section 55-7B-7 requires:

> The opinion is actually held by the expert witness; (2) the opinion can be testified to with reasonable medical probability; (3) the expert witness possesses professional knowledge and expertise coupled with knowledge of the applicable standard of care to which his or her expert opinion testimony is addressed; (4) the expert witness maintains a current license to practice medicine with the appropriate licensing authority of any state of the United States: Provided, That the expert witness' license has not been revoked or suspended in the past year in any state; and (5) the expert witness is engaged or qualified in a medical field in which the practitioner has experience and/or training in diagnosing or treating injuries or conditions similar to those of the patient.

W. Va. Code 55-7B-7 (2003) (emphasis added).  Section 55-7B-7 also provides a rebuttable presumption that the witness is qualified as an expert

> If the witness meets all of . . . [the above] qualifications and devoted, at the time of the medical injury, sixty percent of his or her professional time annually to the active clinical practice in his or her medical field or specialty, or to teaching in his or her medical field or specialty in an accredited university

Id. (emphasis added).

Under this standard, Dr. Sandhu not qualified as an expert as to the standard of care for emergency medicine because he is not actively engaged in that practice.  During his deposition, Dr. Sandhu testified that:

Q.      Okay.  Do you see patients in the emergency department other than as a, other than as being called in on a consult by an emergency department physician?

A.   No.

Q.   Okay.  At any time have you worked as emergency department physician since completing your residency?

A.   No.

Faheem Sandhu Dep. pp. 13-14 (April 28, 2009).

As Dr. Sandhu is not actively engaged in the clinical practice of emergency medicine, he is not qualified under the MPLA to render standard of care testimony regarding the care rendered by Dr. Cook to the Plaintiff in Jefferson Memorial Hospital's emergency room.  Accordingly, his opinion testimony concerning the standard of care as to Dr. Cook should be excluded. Additionally, such testimony by this witness would be cumulative of the testimony anticipated to be offered by Dr. Milzman, another of the Plaintiff's experts.

b.      Plaintiff should also be prohibited from offering the testimony of Dr. Siegel in this matter as to the standard of care and medical causation.  As noted above, the MPLA contains stringent guidelines for expert testimony.  Dr. Siegel does not meet the criteria as he admitted in his deposition that he is no longer engaged in the active practice of medicine or teaching in his medical flied at an accredited university.  Moreover, he was not disclosed to testimony to these issues.  Plaintiff's disclosure of Dr. Siegel's opinions was limited to issues related to the Plaintiff's EMTALA claim that has been dismissed by the Court.  Finally, any testimony by Dr. Siegel on the standard of care or medical causation would be cumulative of the testimony of Dr. Milzman and/or Dr. Sandhu.

13.     Plaintiff should not be permitted to offer cumulative testimony of experts.  In their respective depositions, both Dr. Milzman and Dr. Sandhu offered standard of care and causation testimony.  Plaintiff should be required to elect the subject of the testimony of these witnesses in advance of trial.

14.     Rule 702 of the Federal Rules of Evidence requires trial courts to serve as "gatekeepers," screening the qualifications and opinion of would-be experts in advance of their appearance before the fact-finder.  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (extending *Daubert* to all experts).  That rule requires:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

F. R. E. 702.

Thus, in addition to assuring that the proffered expert is qualified as such, "the Rules of Evidence—especially Rule 702— assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  *Daubert*, 509 U.S. at 597; accord *Kumho*, 526 U.S. at 141.

Plaintiff disclosed Dr. Milzman as an expert in emergency medicine.  He also offered deposition testimony as to the standard of care for emergency medicine, as well as to alleged medical causation, including opinions concerning the purported increase in the length of the Plaintiff's hospital stay based on the failure to diagnose certain fractures.  Dr. Milzman admitted that he could cite to no peer reviewed article or any authoritative text in support of these

opinions.  Plaintiff should not be permitted to offer such testimony for which the expert has no reliable basis.

15.      Any evidence of permanent injury.  The Defendants requested all information regarding the Plaintiff's expert witnesses proscribed by F.R.C.P., Rule 26(b)(4) by their Interrogatories and Requests for Production of Documents served in this matter and the Plaintiff was further required to disclose all opinion testimony pursuant to Rule 26(b)(4).  These requests included a request for the identification of any medical expert opinions on any permanent injury allegedly sustained by the Plaintiff as a result of the alleged medical negligence of the Defendants that is the subject of the Amended Complaint, as well as all injuries allegedly sustained as a result of the claimed negligence.

Plaintiff's discovery responses indicated that the request called for expert opinions, noted that "plaintiff's injuries include exacerbation of pain and injury related to the sacral fracture, emotional distress, and renal failure…." and that the disclosed expert opinions would contain "further information on permanence and damages."  Supplemental Answer to Interrogatory No. 15.   The reports of the Plaintiff's experts were silent as to any permanency.  In his deposition, Dr. Sandhu indicted that the Plaintiff had suffered no permanent neurologic or renal injury as a result of the alleged medical negligence of the Defendants, nor could he offer testimony to a reasonable degree of medical probability concerning any changes in the Plaintiff's chronic back pain.  Dr. Milzman testified that the Plaintiff made a full recover from any renal insufficiency that Plaintiff may have suffered and he offered no opinion that Plaintiff sustained any permanent injury as a result of the alleged medical negligence of the Defendants.  In short, Plaintiff has not properly indicated whether any of his health care providers had opined that he suffers from any permanent condition that was allegedly caused by the Defendants' conduct.   Additionally, at no

time has the Plaintiff made a disclosure of any witness who would offer testimony concerning whether the Plaintiff's alleged injuries were permanent in nature.

16.    Plaintiff apparently now claims that he suffers from sexual dysfunction, bowel and bladder and kidney problems, presumably as a result of the alleged breaches of the standard of care by one or more of the Defendants.  Plaintiff's expert witnesses, a neurosurgeon and an emergency medicine physician, offered no testimony concerning these alleged problems in their respective depositions and no such opinions were disclosed in the reports of these two medical experts.   Accordingly, Plaintiff should not be permitted to interject such testimony, without any properly disclosed expert testimony that these problems were proximately caused by an act or omission of the Defendants.

17.    Any evidence of future medical treatment or future medical expenses. "The permanency or future effect of any injury must be proven with reasonable certainty in order to permit a jury to award an injured party future damages."  Syllabus Point #9, *Jordan v. Bero*, 158 W.Va. 28, 210 S.E.2d 618 (1974).  The Plaintiff failed to disclose in discovery any medical expert opinions on permanent injury sustained by the Plaintiff as a result of the alleged medical negligence that is the subject of the Amended Complaint or any expert opinions concerning future medical treatment or estimates of future medical expenses in response to the Defendants' Interrogatories and Requests for Production of Documents and the Court's Scheduling Order.  As a result, the Plaintiff should not be permitted to present such evidence at trial and should not be permitted to make claims to future damages in the absence of such evidence.

18.    Any evidence of future pain and suffering, future mental anguish and emotional distress, or impairment of capacity to enjoy life.   "The permanency or future effect of any injury must be proven with reasonable certainty in order to permit a jury to award an injured party

future damages." Syllabus Point #9, *Jordan v. Bero*, 158 W.Va. 28, 210 S.E.2d 618 (1974). The Plaintiff failed to disclose in discovery any medical expert opinions on permanent injury sustained by the Plaintiff as a result of the incident that is the subject of the Amended Complaint in response to the Defendants' Interrogatories and Requests for Production of Documents and the Court's Scheduling Order. Therefore, the Plaintiff should not be permitted to present such evidence at trial and should not be permitted to make claims to future damages in the absence of such evidence.

19.     Any other liability actions to which the Defendants may have been a party or any settlements made or verdicts rendered in the course of such actions. Any other suits, causes of action or complaints against the Defendants are irrelevant, immaterial and highly prejudicial. The fact that a lawsuit or complaint has been filed against an individual or an institution is not evidence of liability, negligence or guilt in the present action and, therefore, should in no way be admissible into evidence.

In support of this motion, Defendants state that such evidence would be irrelevant to the matters at issue in this civil action, and its admission would violate Rule 402 of the Federal Rules of Evidence. "West Virginia courts exclude the fact that the Defendant may have been negligent on a former occasion." 1 Franklin D. Cleckley, Handbook on Evidence for West Virginia Lawyers, § 4-3(D) (3rd Ed. 1994) (*citing Wilson v. Fleming*, 89 W. Va. 553, 561, 109 S.E. 810 (1921)). The *Wilson* court went on to state that "[e]vidence of negligence on former occasions is inadmissible for the purpose of proving whether a person did or did not do a particular act in question." Id. at § 4-3(D)(6). Finally, the West Virginia Supreme Court of Appeals underscored its position in *Young v. Saldanha*, 189 W. Va. 330, 431 S.E.2d 669 (1993), stating that "West Virginia Rules of Evidence Rule 404 [] bar[s] the admission of evidence proffered to

demonstrate that [a physician's] negligent treatment of [a patient] conformed with prior instances of alleged or proven negligence." Although the Court in that case was discussing the admission of peer review materials, the admission of evidence of past general liability actions or settlements comports to the same analysis.

Negligence in a past action is irrelevant to prove negligence in the current action. Moreover, if this Court finds such evidence relevant, the evidence should nonetheless be excluded because admission of such evidence would unfairly prejudice the Defendants and could serve to confuse the issues and mislead the jury. F. R. E., Rule 403.

20.     Any medical bills that either Plaintiff or his collateral source were not truly obligated to pay. Plaintiff's claimed medical expenses fall within the category of compensatory damages. "Compensatory damages are such as will compensate the injured party for the injury sustained, and nothing more; such as will make good or replace the lost cost by the wrong or injury . . . the rational behind compensatory damages is to restore the injured party to the position he or she was in prior to the injury. BLACK'S LAW DICTIONARY 390 (6th Ed. 1990) (emphasis added, citations omitted). By analogy, W. Va. Code § 56-6-3 states that:

> [S]pecial damages include lost wages and income, medical expenses, damages to tangible personal property, and **similar out-of-pocket expenditures**, as determined by the Court. (Emphasis added.)

Medical expenses must be "incurred" in order to be awarded as damages in a civil action. It cannot be said that Plaintiffs ever "incurred" liability for all amounts now claimed.

For example, in the instant case, Plaintiffs may claim in part medical expenses from Jefferson Memorial Hosptial, George Washington University Hospital and other providers. It is understood that the total expenses were adjusted downwards. Therefore, Plaintiffs, and their collateral source, were only obligated to pay a portion of the incurred expenses. As portions of

Mr. Ramonas' medical bills from other providers have been written off, no person or third-party will ever be required to pay such amounts. To the extent that any medical bills claimed in this matter were written off or written down so that no one individual or entity will ever bear the burden of paying the written off or written down amount, allowing Plaintiff to claim such amounts as damages, results in a potential windfall to him. The amount of medical damages should be limited to the amount actually paid by Plaintiff, and amounts paid on Mr. Ramonas' behalf by any collateral source, for Mr. Ramonas' care and treatment that can be reasonably associated with any finding of liability.

21.    Defendants request that the Court instruct, direct, and order Plaintiff, his witnesses, and attorney, not to mention, refer to, interrogate concerning, or argue, either directly or indirectly, or attempt to introduce during the course of the trial of this action any opinion testimony from lay witness wherein the proper evidentiary foundation has not been laid to demonstrate the witnesses' requisite medical, scientific, or technical knowledge to render expert opinion testimony.

Lay witness opinions are limited to "those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." F. R. E. 701. Plaintiff's own opinions and those of his wife fail to meet this standard for admissibility. Plaintiff's statements of opinion and those of his witnesses are nothing more than self-serving remarks. The opinions are not helpful to the jury, which is perfectly capable of forming its own opinion based on proper evidence introduced at the trial of this case, as well as on the properly supported expert testimony expected from both sides.

Lay opinions do not go to the determination of a fact in issue. Rule 402 calls for exclusion of this evidence. Assuming that the Court finds some shred of relevance in Plaintiff's and her witnesses' unsupported opinions, the scales still tip in favor of exclusion due to the unfairly prejudicial nature of the evidence. The only purpose served by presenting these opinions to the jury is to incite sympathy. In short, Rule 403 provides for exclusion of this testimony.

In particular, Defendants move the Court to prohibit opinion testimony from Plaintiff and from his wife, both of whom testified in deposition on a number of issues involving medicine, nursing, and radiology in which they have virtually no training, education, or experience to qualify as an expert or to give opinion testimony. At their depositions, Plaintiff and his wife gave opinions on matters including, but not limited to the following: causation testimony, the appropriateness of the care provided by Defendants Cook and Dr. Ammerman, and the employees of Jefferson Memorial Hospital as well as general opinions on the standard of care.

Any opinions expressed by these lay witnesses, as well as other opinions that they may hold, clearly fall within the realm of expert testimony to which there must be a showing that the witness offering the opinion testimony is, by education, training, and experience, competent to render opinion testimony. Accordingly, all such improper lay opinion testimony must be excluded from the trial of this action whether specifically quoted above or not. Further, the Medical Professional Liability Act requires there to be a showing that the person (expert) offering opinion testimony is familiar with the standard of care being provided by the particular health care provider and that the expert practices in the same or similar field as the health care provider whose care he or she is prepared to offer expert opinion upon or has training in diagnosing or treating conditions similar to those of the patient. W. Va. Code § 55-7B-7.

None of the lay witnesses deposed in this action and discussed above possesses any education, training, or experience in the areas upon which they are prepared to offer expert opinion testimony.  Neither Plaintiff nor his wife has ever practiced or been employed in the area of medicine, nursing, radiology, or any other science which would permit them to be qualified as an expert witness competent to testify in the areas identified above or any area dealing with the standard of care or causation.  Without the requisite showing of specialized education, training, and experience in the areas of medicine, nursing, radiology, or other scientific and technical areas, they are not qualified as expert witnesses and cannot give expert opinion testimony.

Further, the Medical Professional Liability Act prohibits them from testifying on medical standard of care where there is no foundation that they have any competency in those areas, are familiar with the standard of care required of those particular specialties, or are engaged in the same or similar practice of those health care providers of which they are critical.

Without the requisite showing of competency, education, training or experience in the areas of nursing, medicine, pharmacology, and other specialized and technical areas, neither these nor any other lay witnesses are qualified to give opinion testimony, and the witnesses should be instructed not to offer opinion testimony on those areas or any other areas without a proper foundation being laid.  To permit lay opinion testimony on areas of medical, nursing, pharmacological, and other scientific areas without the requisite foundation established would usurp the specific prohibitions against such testimony under the West Virginia Rules of Evidence and the Medical Professional Liability Act.

22.    It is anticipated that Plaintiff's witness, Redding Finney, may attempt to offer hearsay testimony concerning the quality of care provided at Jefferson Memorial Hospital based

on conversations with unidentified persons. Any such testimony is plainly hearsay and Plaintiff should be ordered to instruct this witness not to make any such statements in his testimony.

23.     Denise Ramonas, Plaintiff's wife, offered testimony in her deposition concerning conversations with others concerning her husband's medical condition. Any such testimony is plainly hearsay and Plaintiff should be ordered to instruct this witness not to make any such statements in her testimony.

24.     Plaintiff's expert witnesses both admitted in their depositions that it was not a breach of the standard of care for Dr. Cook not to have identified the sacral fractures sustained by Plaintiff in his racing accident.

In Dr. Milzman's deposition the testimony, at page 102 was as follows:

Q.    Okay. Were you able to appreciate any of the three

sacral fractures on any of the films that you've reviewed

today in your testimony?

A.    No, ma'am.

Q.    Okay. Is it your opinion that it was a breach of

the standard of care by Dr. Cook to fail to appreciate the

three -- what you've identified as three sacral fractures in

these films from Jefferson Memorial?

A.    No. It was not.

Dr. Sandhu offered similar testimony, at page 63 of his deposition:

Q.    Okay. The irregularity that you identified, would

you believe, are you going to opine in this matter that it was

a breach of the standard of care for Dr. Cook as an emergency

department physician not to have appreciated --

A.   No.

Q.   -- an irregularity -- let me finish the question --

in the sacrum as you indicated?

A.   No.

Based on the foregoing, Plaintiff should not be permitted to introduce evidence or argument at concerning the Defendants' failure to identify the sacral fractures and any injury or damage that is allegedly related to the Plaintiff's sacral fractures based on the testimony of the Plaintiff's own experts.

25.   Plaintiff's expert witnesses, through their written reports and deposition testimony, have failed to establish the requisite threshold required by WV Code §55-7B-3(b) to proceed on a "loss of chance" theory, i.e. that "to a reasonable degree of medical probability, …following the accepted standard of care would have resulted in a greater than twenty-five percent chance that the patient would have had an improved recovery…".

In Paragraphs 8 and 10 of plaintiff's Amended Complaint, he alleges that "…Ramonas presented with severe pain in his abdominal and pelvic areas after being involved in a high speed automobile accident…Cook examined Ramonas and the x-rays and failed to diagnose the multiple fractures and injury to the kidney, instead diagnosing Ramonas as having a muscle spasm.  Cook failed to diagnose Ramonas' rib fracture."

In Paragraph 17 of plaintiff's Amended Complaint, he alleges that "(a)s a direct and proximate result of acts of negligence…, Ramonas suffered damages which include, but are not limited to, the following:  severe and permanent injuries; physical pain and mental anguish, past, present and that which he may be reasonably be expected to suffer in the future…".

Plaintiff has identified two expert witnesses, Dr. David Milzman and Dr. Faheem Sandhu, to testify concerning standard of care and causation. Drs. Milzman and Dr. Sandhu authored written reports, neither of which addressed the issue of a greater chance of recovery if the defendants had followed the standard of care opined by these experts to have been required in the care and treatment of Mr. Ramonas.

During their respective deposition testimony, Drs. Milzman and Sandhu were asked specifically whether they held opinions regarding the degree of improved recovery Mr. Ramonas would have had if defendants had followed the standard of care each of them alleged to have been required of the defendants:

Question to Dr. Milzman:    "...From the injuries that he suffered, assuming he'd been appropriately and timely diagnosed and treated, what is the period of time he would have had acute pain from that injury, those injuries?"

Question by Mr. Williams:    "Assuming a hospitalization the day that he was diagnosed, is that part of your question?

Answer by Mrs. Vaglienti:    "Yes, sir.  I said appropriately and timely diagnosed and treated."

Answer by Dr. Milzman:    "Probably pretty close to what I answered.  His acute pain probably could have gone—you know, the fractures heal slowly, especially a rib fracture, can take four to—four to six weeks.  The spinous process fracture, the sacral fractures take time.
But I would call, in my opinion, after about seven to ten days his acute pain becomes chronic pain.  So I would say somewhere in that seven to—up to seven to ten days, he would have had acute pain.

Question by Mrs. Vaglienti:  "Okay.  So even if Mr. Ramonas would have been timely diagnosed and treated, you believe there would have been some period of chronic pain, is that what I'm hearing you saying?"

Answer by Dr. Milzman:    "Yes."

Question by Mrs. Vaglienti:  "Yes.  And how long, assuming he had been appropriately and timely diagnosed and treated, would you have expected his chronic pain to last?"

Answer by Dr. Milzman:    "I mean, he's not a young gentleman.  I think with fractures

in your back, you can always have some pain from that.  I mean, he's gonna—he's gonna be liable—he's gonna have a significantly decreased pain threshold due to the multitude of injuries.
So if I tell I think roughly he's gonna have chronic pain for six to eight weeks of significant pain level, and then he's gonna have insig—he's going to have variable low significant pain level and additional three to six months and maybe years to come.  But this is where, that kind of chronic pain, I don't really hold myself out to be an expert on."

Question by Mrs. Vaglienti:   "Okay.  Are you aware of any evidence-based medicine that quantifies the expected time for acute pain or chronic pain from the kid of injuries that Mr. Ramonas suffered, assuming appropriate and timely diagnosis and treatment?

Answer by Dr. Milzman:       "No."

*pp. 244-246, Deposition transcript, David P. Milzman, M.D., attached to Doc. No. 114, as Exhibit H.*

Question to by Mrs. Vaglienti:       "…Can you say to a reasonable degree of medical probability that the failure to diagnose the transverse process fracture and the failure to admit the patient to Jefferson Memorial Hospital on 9/19/05 prolonged his chronic pain period?"

Answer by Dr. Sandhu:       "More likely than not."

Question by Mrs. Vaglienti:   "Okay.  And what's the basis for that opinion given that he already had chronic pain before this accident?"

Answer by Dr. Sandhu:       "It's the evolution of the problem.  It's the cascade of events that, that happened as a result of the failure to diagnose, treat and, and stabilize the condition.  I mean because he, you know, he was subsequently transported, you know, home in a condition that could have been damaging and then developed progression of symptoms in a short period of time."

Question by Mrs. Vaglienti:   "Okay.  Can you say to a reasonable degree of medical probability what is the difference between his chronic pain before the motor vehicle accident on 9/19/05 and his chronic pain condition right today?"

Answer by Dr. Sandhu:       "Well, I haven't seen a recent, most recent medical exam, but, you know, his chronic condition prior to this hospitalization, he was not on any medication for his back.  I mean he was just receiving, you know, occasional interventions, but, you know, for someone with a chronic condition it seemed to be adequately managed without narcotic pain medicine."

Question by Mrs. Vaglienti:   "What medication is he on now for his chronic pain?"

Answer by Dr. Sandhu:        "Good question.  There's some recent—you know, I'm not sure."

Question by Mrs. Vaglienti:   "Okay.  So given that you're not sure what medicine, if any, he's on for chronic pain now, can you say to a reasonable degree of medical probability that his chronic pain before the accident on 9/19/05 is different than his chronic pain now?"

Answer by Dr. Sandhu:        "Not without reviewing his deposition or recent medical evaluation."

*pp. 139-141, Deposition transcript, Faheem Sandhu, M.D., attached to Doc. No. 114, as Exhibit J.*

Inasmuch as plaintiff has failed to establish through expert testimony that, to a reasonable degree of medical probability, following the accepted standard of care would have resulted in a greater than twenty-five percent chance that Mr. Ramonas would have had an improved recovery, i.e. less chronic pain, plaintiff cannot for the first time at trial, make such an assertion.

26.     Defendant JMH filed a Motion for Summary Judgment on or about June 1, 2009. By order dated August 7, 2009, the Court granted in part and denied in part the Motion for Summary Judgment (Doc. 127).  As required when ruling upon a motion for summary judgment, the Court viewed the evidence presented by the parties in the light most favorable to the party opposing the motion and gave to that party the benefit of all favorable inferences that may be reasonably be drawn from the evidence.  *First Nat'l Bank v. Maryland Cas. Co.,* 354 F. Supp. 189 (S.D. W.Va. 1973).  The denial of a motion for summary judgment because of unresolved issues of fact does not settle or even tentatively decide anything about the merits of the claim.  It is strictly a pre-trial order that decides only one thing—that the case should go to trial.  *Rypkema v. Bowers,* 66 F.R.D. 564, (N.D. W.Va. 1974).

Thus, Plaintiff should be prohibited from presenting evidence or otherwise suggesting that facts adopted by the Court in ruling upon JMH's Motion for Summary Judgment (Doc.   ) are "undisputed" or "established by the Court."  The Court's recitation of facts for purposes of ruling upon the Motion for Summary Judgment filed by JMH do not constitute fact-finding that supplants the role of the jury in this matter.  Rather, the Court's recitation of facts for purposes of ruling on the Motion for Summary Judgment constitute only the Court's finding that there are genuine issues of material fact that must be resolved by the jury at trial rather than by the Court via summary judgment.

Wherefore, for the reasons foregoing, the Defendants respectfully request that this Court to grant their Motions in Limine as to all matters set forth herein.

**JEFFREY TRENT COOK, M.D.**
**By Counsel**

**/s/ Tracey B. Eberling**
_____

Tracey B. Eberling, Esquire
STEPTOE & JOHNSON, PLLC
Post Office Box 2629
Martinsburg, WV  25401
W.V. State Bar No. 6306
(304) 262-3532

**WEST VIRGINIA UNIVERSITY HOSPITALS-EAST,**
**INC. and  JEFFERSON MEMORIAL HOSPITAL**
**By Counsel**

/s/      Christine S. Vaglienti
_____

Christine S. Vaglienti, Esq.
WVU Hospital, Inc.
Legal Services Division

One Medical Center Drive
Morgantown, WV 26506
W.V. State Bar No. 4987
(304) 598-4199

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of January, 2010, I served a copy of *Joint Motions in Limine of Defendants Jeffrey Trent Cook, M.D. and West Virginia University Hospitals-East, Inc. and Jefferson Memorial Hospital* with the Clerk of the Court using the CM/ECF system, which will send notification to the below named counsel:

W. Howard Klatt, Esq.
Klatt Law Office
1600 National Road
Wheeling, WV 26003

Harvey S. Williams, Esq.
1666 Connecticut Avenue, NW, Suite 225
Washington, D.C. 20009

_____/s/_____
Tracey B. Eberling (WV Bar No. 6306)
STEPTOE & JOHNSON PLLC
Post Office Box 2629
Martinsburg, WV  25402
(304) 262-3532
Attorney for Jeffrey Trent Cook, M.D.
